Stanley J. Silverstone
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601
Tel: (914) 997-1346

*Attorneys for Supplement B Pilot Beneficiaries*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                            :    Appeal from Chapter 11

In re:                                      :

                                         :    Case No. 11-15463-SHL

AMR CORPORATION, *et al.*,           :

                                       :    (Jointly Administered)

                     Debtors.           :

                                       **:**
-----------------------------------------------------------x
                                           :

SUPPLEMENT B PILOT BENEFICIARIES,   :

                                       :    Case No. 12-cv-7800-CM

                                       :

                    Appellants,        :

                                       :

                    v.                  :

                                       :

AMR CORPORATION, *et al.*,           :

                                       :

                    Appellees.        :
-----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
SUPPLEMENT B PILOT BENEFICIARIES' MOTION FOR
STAY PENDING APPEAL OF ORDER PURSUANT TO 11 U.S.C. § 1113**

# **TABLE OF CONTENTS**

Table of Cases ……………………………………………………………………… 3

Introduction ………………………………………………………………………… 5

Factual Background ……………………………………………………………..... 8

Argument …………………………………………………………………………… 12

     I.     The Supplement B Pilots Will Suffer Irreparable
            Injury Absent A Stay …………………………………………………... 12

     II.    No Other Party Will Suffer Substantial Injury If
            A Stay Is Issued ……………………………………………………….... 15

     III.   There Is A Substantial Possibility of Success on Appeal ……………………… 15

     IV.   The Public Interest Weighs in Favor of Granting A Stay ……………………… 19

Conclusion …………………………………………………………………….…... 20

**TABLE OF CASES**

*Air Line Pilots Association v. O'Neill*, 499 U.S. 65 (1991) ……………………………………… 18

*Consol. Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299 (1989) ……………….... 18

*Crusos v. United Transp. Union, Local 1201*, 786 F.2d 970 (9th Cir. 1986),
*cert. denied*, 479 U.S. 934 (1986) ………………………………………………………………… 19

*DelCostello v. Teamsters*, 462 U.S. 151 (1983) ………………………………………………….. 19

*Frankl v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011) ………………………………………... 13

*Hirschfeld v. Bd. of Elections*, 984 F.2d 35 (2d Cir. 1992) …………………………………… 12

*Hodges v. Atchison, Topeka & Santa Fe Ry. Co.*, 728 F.2d 414 (10th Cir.),
*cert. denied*, 469 U.S. 822 (1984) ………………………………………………………………… 19

*Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.,*
 789 F.2d 139 (2d Cir.1986) ……………………………………………………………………… 18

*In re Adelphia Communications Corp.*, 361 B.R. 337 (S.D.N.Y. 2007) …………… 12, 14-15, 19

*In re Adelphia Communications Corp.*, 333 B.R. 649 (S.D.N.Y. 2005) ……………………… 12

*In re Charter Communications, Inc.*, 2012 U.S. App. LEXIS 18538 (2d Cir. Aug. 31, 2012)... 14

*In re Chemtura Corp.,* 2010 Bankr. LEXIS 3988 (Bankr. S.D.N.Y. Nov. 8, 2010) ………. 12, 15

*In re Continental Airlines, Inc.*, 125 F.3d 120 (3d Cir. 1997) ………………………………… 18

*In re General Motors Corp.*, 409 B.R. 24 (Bankr. S.D.N.Y. 2009),
*aff'd*, 2009 U.S. Dist. LEXIS 61279 (S.D.N.Y. July 9, 2009) ………………………………… 12

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) …………………………………….. 10

*In re Motors Liquidation Company*, 436 B.R. 752 (Bankr. S.D.N.Y. 2010) …………………... 12

*In re Overmyer*, 53 B.R. 952 (Bankr. S.D.N.Y. 1985) …………………………………………… 12

*In re S.A. Mechanical, Inc.*, 51 B.R. 130 (Bankr. D. Ariz. 1985) ……………………………… 16

*Kozra v. IBEW*, 892 F. Supp. 536 (S.D.N.Y. 1995) ……………………………………………… 19

*L. O. Koven & Brother, Inc. v. Local Union No. 5767*, 381 F.2d 196 (3d Cir. 1966) …………. 18

*Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33 (1998) …………………………………… 18

*Masy v. N.J. Transit Rail, Inc.*, 790 F.2d 322 (3d Cir. 1986) …………………………….. 19

*Morio v. N. Am. Soccer League*, 632 F.2d 217 (2d Cir. 1980) ………………………… 15

*Price v. S. Pac. Transp. Co.*, 586 F.2d 750 (9th Cir. 1978) …………………………… 18

*Rakestraw v United Airlines, Inc.*, 765 F. Supp. 474 (N.D. Ill. 1991),
*aff'd in relevant part and rev'd in part on other grounds*, 981 F.2d 1524 (7th Cir. 1992) ……. 19

*Renneisen v. American Airlines, Inc.*, 990 F.2d 918 (7th Cir. 1993) …………………………..5-6

*Small v. Avanti Health Systems, LLC,* 661 F.3d 1180 (9th Cir. 2011) ………………………… 13

*Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192 (1944) ……………………………….. 19

*Steffens v. BRAC*, 797 F.2d 442 (7th Cir. 1986) …………………………………………….. 19

*Sullivan v. American Airlines*, 424 F.3d 267 (2d Cir. 2005) …………………………………... 18

*United Independent Flight Officers, Inc. v. United Air Lines, Inc.,*
572 F. Supp. 1494 (N.D. Ill. 1983), *aff'd*, 756 F.2d 1274 (7th Cir. 1985) …………………….. 19

## INTRODUCTION

On September 25, 2012, the Appellants, Supplement B Pilot Beneficiaries, filed a motion in the Bankruptcy Court, pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, for a stay pending appeal of the Bankruptcy Court's Order entered on September 5, 2012, which authorized American Airlines to reject its Collective Bargaining Agreement with the Allied Pilots Association, the collective bargaining representative of the pilots employed by American Airlines.  Since the Bankruptcy Court has not yet issued a ruling on that motion, the Supplement B Pilot Beneficiaries respectfully request that this Court, which has jurisdiction over the appeals of the Bankruptcy Court's September 5th Order, grant a stay pending appeal of the Order insofar as it permits American to abrogate the provisions of Supplement B of the Collective Bargaining Agreement.

The Supplement B Pilot Beneficiaries ("Supp. B Pilots") are pilots currently employed by American Airlines, on an approved leave of absence, or disability retirement, who were hired by American Airlines prior to November 1, 1983.  The Supp. B Pilots are covered by Supplement B of the Collective Bargaining Agreement between the Allied Pilots Association ("APA") and American Airlines ("American" or the "Debtor" or the "Company").  A complete list of the Supp. B Pilots supporting this motion and appeal is attached to the Supp. B Pilots' Notice of Appeal (SDNY Doc. No. 1).  According to American, there are currently 172 Supp. B Pilots.  (Bankr. Doc. No. 2297, at 2, n.1, attached to the supporting Declaration of Larry Scerba as Exhibit A). The current count of Supp. B Pilots supporting this filing stands at 130, which constitutes a large majority of the identified group.

In 1983, American Airlines entered into concessionary labor agreements with its unions that allowed the Company to avert bankruptcy and become "an unqualified success."  *Renneisen*

*v. American Airlines, Inc.*, 990 F.2d 918, 920 (7th Cir. 1993). In consideration for the contractual concessions deemed necessary to avert bankruptcy, American Airlines and the Pilots' Union, the Allied Pilots Association (APA), entered into a tripartite agreement, in which they agreed that they would "take no action … to diminish the pay or the retirement benefit programs [of] pilots hired prior to November 1, 1983…." (Supplement B, § B.1, attached to the Scerba Declaration as Exhibit B). The parties further agreed that Supplement B would remain in effect as long as any pre-November 1, 1983 hires remain employed and that the terms of Supplement B could only be modified "by unanimous agreement between the parties and a majority of the [covered] pilots…." (*Id*. at § B.2.). Thus, APA successfully bargained for "permanent guarantees" of employment and financial security at existing levels for pre-1983 pilots and for a process specifically designed to protect these pilots as they became a minority within APA's membership.

Notwithstanding the clear statutory prohibition of Section 1113(f) of the Bankruptcy Code, the Debtors acted, from the time of their bankruptcy filing, as if Supplement B were no longer in effect. Substantively, the Debtors suspended adherence to Supplement B by withholding the lump-sum distribution option of the pilots' defined benefit retirement plan (the "A Fund"). Procedurally, the Debtors violated Supplement B not just by seeking to modify Supplement B, but by seeking to modify Supplement B without dealing directly with the Supplement B Pilots. As a result, the pilots covered by Supplement B filed a grievance, demanding that (a) the Company cease and desist from its unlawful activity; (b) the Company negotiate with the covered pilots and their legal representatives with respect to all proposed modifications to Supplement B; (c) no modifications be made to Supplement B without majority approval of the covered pilots; and (d) all grievants be made whole. (The grievance is attached

to the Scerba Declaration as <u>Exhibit C</u>).

After the filing of the grievance, the Debtors continued to act in violation of the procedural and substantive protections contained in Supplement B, and, in issuing the order granting American's § 1113 motion to reject the collective bargaining agreement, the Bankruptcy Court exceeded its jurisdiction in disregarding the Supplement B Pilots' claims. Worse still, the Bankruptcy Court failed to address the Supplement B Pilots' jurisdictional argument.

A stay pending appeal is sought because the Order authorizing rejection of the CBA violates Section 1113 of the Bankruptcy Code, the mandatory dispute resolution processes of the Railway Labor Act, and the jurisdictional limitations of the Bankruptcy Court.

Absent a stay, the Supplement B Pilots face irreparable injury, based on American's refusal to negotiate, and based on American's implementation of changes to pilot retirement and health benefits that became effective on November 1, 2012. American also sought, and recently obtained, a ruling from the Internal Revenue Service that will allow it to amend the defined benefit pension plan to eliminate the lump-sum distribution option from the plan. A stay of any amendment to the plan is necessary, pending appeal of the § 1113 order, insofar as the proposed amendment would allow American to eliminate the lump-sum option for the Supp. B Pilots. If these changes to the benefits of Supp. B Pilots are allowed, and Debtors are permitted to file a plan of reorganization during the course of the appeal, the Supp. B Pilots may be left without recourse, regardless of the merits of their claims.

In addition to irreparable injury, the Supp. B Pilots also satisfy the other requirements for a stay. No other party will suffer any injury if a temporary stay pending appeal is issued. Clearly, the harm to the Supp. B Pilots if a stay is not issued far outweighs the potential harm to

the Debtors if a stay is issued because the Supplement B group is a tiny fraction of the Debtors' labor cost exposure.

There is a substantial possibility that the Supp. B Pilots will succeed on the merits of their appeal based upon (1) the Bankruptcy Court's error in holding that 11 U.S.C. § 1113 authorizes the Debtors to eliminate Supplement B of the Collective Bargaining Agreement without prior negotiations with the Supp. B Pilots, despite express contractual provisions that required the Debtors to obtain the Supp. B Pilots' approval for any modification to Supplement B; (2) the Bankruptcy Court's violation of its jurisdictional limitations by deciding procedural and substantive issues that were the subject of a pending grievance and, therefore, within the exclusive jurisdiction of the System Board of Adjustment; and (3) the Bankruptcy Court's failure to consider the Debtors' exposure to liability for breach of the duty of fair representation owed to the Supp. B Pilots.

The public interest in preventing the subversion of § 1113 of the Bankruptcy Code, and the Railway Labor Act, and preventing the Bankruptcy Court from exceeding its jurisdiction, will also be served by a stay.

### FACTUAL BACKGROUND

Supplement B is a tripartite agreement between American Airlines, the Allied Pilots Association ("APA"), and the Supp. B Pilots, which expressly provides that the parties would "**take no action … to diminish the pay or the retirement benefit programs [of] pilots hired prior to November 1, 1983**…."   (Supplement B § B.1) (emphasis added).   Pursuant to Supplement B, the parties further agreed to "irrevocably waive" the right to modify its provisions with a single procedural exception:  that the terms of Supplement B could only be modified "by unanimous agreement between the parties and a majority of the [covered] pilots…."  *Id.* at § B.2.

Inherent in this exception is the obligation to confer and negotiate with the covered pilots as a group prior to making any effort to modify the terms of Supplement B, in view of the fact that the interests of these pilots are distinct from those of American Airlines' pilots as a whole. American and APA violated the provisions of Supplement B during the Section 1113 negotiation process, and American proposed changes to the Collective Bargaining Agreement that would diminish the existing pay and/or benefit programs in a manner that would adversely affect the pilots hired prior to November 1, 1983.

On March 22, 2012, five days before American filed its initial § 1113 motion (Bankr. Doc. No. 2042), the Supp. B Pilots demanded that the Company and APA comply with the contractual requirement to negotiate with the Supp. B Pilots over any contemplated changes to existing benefit programs that would adversely affect pilots hired prior to November 1, 1983. (Scerba Declaration, Exhibit D).  In that letter, counsel for the Supp. B Pilots stated that "we write to advise you that no change may be made to Supplement B without the approval of the majority of the Supplement B Beneficiaries as described in Section B.2 of the supplement." However, American refused to negotiate.

As a result, on March 30, 2012, Captain Larry Scerba filed a grievance on behalf of himself and all other American Airlines pilots hired prior to November 1, 1983.  (Scerba Declaration, Exhibit C).  The purpose of the grievance was "to grieve the Company's substantive and procedural violations of Supplement B of the CBA."  (Grievance, at 1).  Those violations were, and continue to be, as follows:

> The Company has violated the procedural provisions of Supplement B by engaging in efforts to modify or eliminate Supplement B without consulting and negotiating with the covered pilots.  The Company has also already violated Supplement B substantively by advising covered pilots that, if they retire now, they are no longer entitled to a lump sum retirement option [i.e., the lump sum distribution option of the pilots' defined benefit retirement plan].

(Grievance, at 2). Pursuant to the grievance, the grievants requested the following relief:

> (a) that the Company cease and desist from its unlawful activity, (b) that it negotiate with the covered pilots and their legal representatives with respect to all proposed modifications to Supplement B, (c) that no modifications be made to Supplement B without majority approval of the covered pilots, and (d) that all grievants be made whole.

(Grievance, at 2). The grievance remains pending today, and must be resolved by the minor dispute resolution procedures of the Railway Labor Act.

The grievance was filed at a time when Section 1113 required that the Debtors respect the full force and effect of the Collective Bargaining Agreement. Section 1113(f) of the Bankruptcy Code provides that: "No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." The Second Circuit Court of Appeals has held that this statutory language means what it says:

> We construe subsection 1113(f) quite literally. We hold that it was meant to prohibit the application of any other provision of the Bankruptcy Code when such application would permit a debtor to achieve a unilateral termination or modification of a collective bargaining agreement without meeting the requirements of § 1113.

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 990-91 (2d Cir. 1990). Thus, under federal law, the Supp. B Pilots' contractual rights – both substantive and procedural – remained in full force and effect throughout the § 1113 process.

After initially denying American's § 1113 motion on August 15, 2012 (Bankr. Doc. No. 4044), the Bankruptcy Court granted American's renewed motion to reject the Collective Bargaining Agreement by order dated September 5, 2012. (Scerba Declaration, <u>Exhibit E</u>). On September 14, 2012, the Supp. B Pilots filed their Notice of Appeal of the September 5th Order. (Scerba Declaration, <u>Exhibit F</u>).

On September 12, 2012, American announced to its employees that "we will soon begin to implement universal changes to active medical, retiree medical and retirement benefit plans for everyone."[1]  The letter went on to inform employees that:

- "On November 1, the Defined Benefit pension plans and the pilot B Plan will be frozen."  As a result, after October 31, 2012, the pilots' defined benefit plan (the A Fund) ceased accruing additional benefits.  With respect to the defined contribution plan (the B Fund), the Company advised that "replacement plan details will be determined at a later date."  Therefore, the 11% contributions to each Supplement B-covered B Plan ceased completely on October 31, 2012, with no contributions scheduled to continue after October 31, 2012, contrary to Supplement B.

- "Anyone who initiates retiree medical coverage on or after November 1 will go into the new retiree medical program."

- "New medical options and contributions will be implemented for all active employees on January 1, 2013."

- "The company will no longer offer retiree life insurance coverage for any employee who retires on or after November 1, 2012."

Thus, the Supp. B Pilots seek an order requiring American to unfreeze any benefits in favor of the Supp. B Pilots that were frozen on November 1, and to stay any further changes in pay or benefits during the pendency of this appeal in order prevent the irreparable harm that these changes will cause to the pilots covered by Supplement B.[2]

---

[1] The September 12, 2012 letter from Denise Lynn, Senior Vice President, People, is located on the AMR Restructuring website (under "Our Plan, Our Business") at: http://www.restructuringamr.com/documents/LynnLetterandAttachmentFinal9.12.12.pdf (visited Nov. 21, 2012).

[2] Freezing the defined benefit plan for all American pilots except for the Supp. B Pilots is permissible.  According to the Pension Benefit Guaranty Corporation (PBGC), a defined benefit plan "can be frozen for some, but not all, participants.  Such a partial freeze could be based on age, tenure, job classification or plant location."  PBGC, "An Analysis of Frozen Defined Benefit Plans," Dec. 21, 2005, at 2, located at http://www.pbgc.gov/docs/frozen_plans_1205.pdf.

## ARGUMENT

Fed. R. Bankr. P. 8005 provides, in relevant part:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge . . . pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

Granting a stay of a bankruptcy court order pending appeal is within the discretion of the court. *In re Overmyer*, 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985). A party seeking a stay pending appeal under Rule 8005 must show that (1) it would sustain irreparable injury if a stay were denied; (2) other parties would not suffer a substantial injury if a stay were granted; (3) the public interest favors a stay; and (4) there is a substantial possibility of success on the merits of the appeal. *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1992); *In re Motors Liquidation Company*, 436 B.R. 752 (Bankr. S.D.N.Y. 2010); *In re General Motors Corp.*, 409 B.R. 24 (Bankr. S.D.N.Y. 2009), *aff'd*, 2009 U.S. Dist. LEXIS 61279 (S.D.N.Y. July 9, 2009); *In re Adelphia Communications Corp.*, 333 B.R. 649, 658-59 (S.D.N.Y. 2005).

Bankruptcy courts engage "in a balancing process with respect to the four factors, as opposed to adopting a rigid rule." *In re Chemtura Corp.,* 2010 Bankr. LEXIS 3988 (Bankr. S.D.N.Y. Nov. 8, 2010); *General Motors Corp.*, 409 B.R. at 30. The balancing of these four factors in this case demonstrates that issuance of a stay pending appeal is both necessary and proper.

## I.     THE SUPPLEMENT B PILOTS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY.

"A showing of probable irreparable harm is the principal prerequisite for the issuance of a

[Rule 8005] stay." *In re Adelphia Communications Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007) (footnote omitted).  The Supplement B Pilots will suffer irreparable harm without a stay.

Absent a stay, the Supplement B Pilots will be irreparably harmed by the Debtors' failure to comply with their contractual and statutory obligations to negotiate with them over the proposed modifications to existing benefit programs that will adversely affect pilots hired prior to November 1, 1983.  The damage caused to a party cheated out of its right to bargain is difficult to estimate and therefore gives rise to what may be fairly classified as irreparable harm. *Small v. Avanti Health Systems, LLC,* 661 F.3d 1180, 1191(9th Cir. 2011) (an employer's failure to fulfill his obligation to bargain in good faith "will likely cause a myriad of **irreparable harms**"); *Frankl v. HTH Corp.*, 650 F.3d 1334, 2011 WL 3250637, at *23 (9th Cir. 2011) ("[F]ailure to bargain in good faith[ ] has long been understood as likely causing an irreparable injury to union representation").

It is also certain that, if a stay is not ordered, the Supplement B Pilots will be irreparably harmed by the loss of their guaranteed retirement benefits, as announced by the Debtors.  On September 12, 2012, the Company announced to its employees that "we will soon begin to implement universal changes to active medical, retiree medical and retirement benefit plans for everyone." (*See* footnote 1 above).  The Summary of Universal Benefits Changes attached to the Company's September 12th letter went on to inform its pilots that "[t]he pilot A and B plans will be frozen effective November 1."  As a result of these changes, the pilots' defined benefit plan (the A Fund) ceased to accrue additional benefits after October 31, 2012.  With respect to the defined contribution plan (the B Fund), the Company's September 12th letter advised that "replacement plan details will be determined at a later date."  The 11% contributions to each Supplement B-covered B Fund ceased completely on October 31, 2012, with no contributions

scheduled to continue after October 31, 2012, contrary to Supplement B. In addition, American announced changes to retiree medical coverage and life insurance coverage effective November 1.

Further, American sought, and recently obtained, a ruling from the Internal Revenue Service that will allow it to amend the pilots' defined benefit pension plan to eliminate the lump-sum distribution option from the plan. (*See*, Final IRS Rule, Amendment of Prohibited Payment Option Under Single-Employer Defined Benefit Plan of Plan Sponsor in Bankruptcy, attached hereto as <u>Exhibit G</u>). Eliminating the lump-sum distribution option for pre-1983 pilots violates Supplement B. A stay of any amendment to the plan is necessary, pending the Supp. B Pilots' appeal of the § 1113 order, insofar as the proposed amendment would allow American to eliminate the lump-sum option for the Supp. B Pilots. In the event that the Supp. B Pilots' appeal is successful, American will not have authority to amend the plan to eliminate the lump-sum payment option for the Supp. B Pilots.

These benefits changes will most severely impact the Supplement B Pilots, who are the most senior pilots at American, many of whom are on the verge of mandatory retirement. For these pilots, the Company's dismantling of their retirement benefits is especially inequitable, as these long-serving employees do not have time to compensate for these sudden benefit reductions.

Further, on November 9, 2012, the Bankruptcy Court set a deadline of January 28, 2013 for the Debtors to file a chapter 11 plan of reorganization. (Bankr. Doc. No. 5301). Thus, it is likely that the Debtors' plan will be filed during the pendency of the Supp. B Pilots' appeal, which may moot the appeal. *In re Charter Communications, Inc*., 2012 U.S. App. LEXIS 18538 (2d Cir. Aug. 31, 2012). Where, as in the present case, "the denial of a stay pending appeal risks

mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied."

*In re Adelphia Communications Corp.*, 361 B.R. at 348 (emphasis in the original). Because any

appeal of the Order authorizing rejection of the Collective Bargaining Agreement, including

Supplement B, could be dismissed as moot, the Supp. B Pilots have made a showing that they

will suffer irreparable harm in the absence of a stay.

The unilateral elimination of Supplement B will also cause irreparable harm by

discrediting the union and causing internal disputes between the Supp. B Pilots and their union.

*See*, *Morio v. N. Am. Soccer League*, 632 F.2d 217, 218 (2d Cir. 1980) (holding that an

employer's imposition of unilateral changes to working conditions causes irreparable harm by

eroding a union's "legitimacy with its members").

## II. NO OTHER PARTIES WILL SUFFER SUBSTANTIAL INJURY IF A STAY IS ISSUED.

In contrast, granting the Supp. B Pilots a stay pending appeal will not harm the Debtors.

Clearly, the harm to the Supp. B Pilots if a stay is not issued far outweighs the potential harm to

the Debtors if a stay is issued because the Supplement B group is a tiny fraction of the Debtors'

labor cost exposure. According to American, there are 172 pilots currently covered by

Supplement B, out of a total of 10,738 pilots employed by American. (Scerba Declaration,

Exhibit A, at 2). Thus, American will not be harmed by staying any changes to the pay and

benefits of the 172 Supp. B Pilots, while being able to proceed with rejection of any contractual

terms for the majority of American pilots who are not covered by Supplement B.

## III. THERE IS A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL.

In the context of a stay pending appeal of a bankruptcy court order, the movant must

demonstrate "a substantial possibility, although less than a likelihood, of success on the merits of

movant's appeal." *In re Chemtura Corp.,* 2010 Bankr. LEXIS 3988, at *15. The Supp. B Pilots

respectfully submit that they satisfy this requirement because there is a substantial possibility that the Supp. B Pilots will succeed on the merits of their appeal based upon the following:

(1) The Bankruptcy Court's error in holding that 11 U.S.C. § 1113 authorizes American to eliminate Supplement B of the Collective Bargaining Agreement without prior negotiations with the Supp. B Pilots. Supplement B was created in consideration for the contractual concessions deemed necessary to avert bankruptcy in 1983. American Airlines and APA agreed that they would "take no action … to diminish the pay or the retirement benefit programs [of] pilots hired prior to November 1, 1983…." (Supplement B § B.1). The parties further agreed that Supplement B would remain in effect as long as any pre-November 1, 1983 hires remain employed and that the terms of Supplement B could only be modified "by unanimous agreement between the parties and a majority of the [covered] pilots…." (*Id*. at § B.2.). The Bankruptcy Court's order authorizing American to reject the Collective Bargaining Agreement, including the elimination of Supplement B without "unanimous agreement between the parties and a majority of the [covered] pilots," violates § 1113. *In re S.A. Mechanical, Inc.*, 51 B.R. 130 (Bankr. D. Ariz. 1985) (holding that Section 1113 requires the debtor to negotiate in good faith in an attempt to reach mutually satisfactory modifications of a collective bargaining agreement).

(2) The Bankruptcy Court's error in holding that "there is nothing in Section 1113 itself that supports the notion that a collective bargaining right can exist in perpetuity. (Bankr. Doc. No. 4044, at ECF 109). The Bankruptcy Court's August 15th decision took the position that nothing is permanent notwithstanding the fact that Supplement B provided for no exception for a 1113 motion. *Id*. The Court said, "As a threshold matter, there is nothing in Section 1113 itself that supports the notion that a collective bargaining right can exist in perpetuity." *Id*. Clearly, the Court recognized, then, that Supplement B's "otherwise" language was meant to be all

inclusive, that there was no exception for bankruptcy, and that the parties intended the promise of Supplement B to be, in effect, permanent absent change as outlined in Supplement B only. The Bankruptcy Court rejected that permanency as applied to the Supplement B pilots, yet this same Court approved a TWU agreement with the following term:

> For a period of three years from the date of signing, the Debtors and their successors will not file or support any motion under section 1113 of the Bankruptcy Code seeking rejection or modification of the New CBAs, provided that, the Debtors and their successors may do so in the event of a material deterioration in the Debtors' financial condition or prospects.

(Bankr. Doc. No. 4131, ECF p. 12, at (v), and Doc. No. 4413, attached to Scerba Declaration as Exhibit H).  This runs directly contrary to the rationale given by the Bankruptcy Court to deny the Supplement B Pilots the benefit of their term of "moratorium."  If such a moratorium is approved and deemed enforceable for the TWU employees, but not the Supplement B Pilots, then either the Bankruptcy Court was asked to engage in a cruel farce for the purpose of deluding the TWU-represented employees – or the Supplement B Pilots' moratorium is equally enforceable and the Bankruptcy Court should have recognized that.

(3) The Bankruptcy Court's violation of its jurisdictional limitations by deciding procedural and substantive issues that were the subject of a pending grievance and, therefore, within the exclusive jurisdiction of the System Board of Adjustment.  In the course of the § 1113 proceedings, American disputed its obligation to deal directly with the Supp. B Pilots concerning modifications to Supplement B; however, that is a dispute over which the Court has no jurisdiction.

As stated in the Supp. B Pilots' Objection (Bankr. Doc. No. 2134), the right of these affected Pilots to negotiate and consent to any modification of Supplement B is a contract-based right.  Since American disputed this contract right, the parties have a minor dispute over contract

interpretation over which the Court has no jurisdiction; rather, it is within the exclusive jurisdiction of the System Board of Adjustment. *See Consol. Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 304 (1989); *Sullivan v. American Airlines*, 424 F.3d 267 (2d Cir. 2005); *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.,* 789 F.2d 139, 141 (2d Cir.1986) ("The labor-management adjustment boards, created pursuant to 45 U.S.C. § 184, have exclusive jurisdiction over 'minor disputes' ...."). To the extent that American contested its obligation to negotiate with the Supp. B Pilots regarding any modification to Supplement B, the contention presents a contractual dispute, which is the subject of a grievance that has already been duly filed pursuant to the collective bargaining agreement. As a matter of law, the Court has no jurisdiction over that dispute.

Even in the bankruptcy context, "questions involving an interpretation of the collective bargaining agreement should if feasible be decided by an arbitrator." *In re Continental Airlines, Inc.*, 125 F.3d 120, 131 (3d Cir. 1997), quoting *L. O. Koven & Brother, Inc. v. Local Union No. 5767*, 381 F.2d 196, 205 (3d Cir. 1966).

(4) The Bankruptcy Court's failure to consider American's exposure to liability for breach of the duty of fair representation owed to the Supp. B Pilots. A union breaches the duty of fair representation (DFR) when its conduct toward a minority group within the bargaining unit is "arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc*., 525 U.S. 33, 44 (1998). This DFR obligation applies to all union activity, including contract negotiation. *Air Line Pilots Association v. O'Neill*, 499 U.S. 65, 67 (1991).

American's invitation to APA to abandon the interests of the Supp. B pilots exposes it to shared liability for the damages arising from the DFR breach. *Price v. S. Pac. Transp. Co.*, 586 F.2d 750, 752 (9th Cir. 1978) ("joinder of the employer is permissible when, as in this case, the

employee alleges that the employer *is implicated in the union's breach of its duty of fair representation*"). *See also, Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 207 (1944) (carrier was joined as defendant in DFR action); *DelCostello v. Teamsters*, 462 U.S. 151, 165 (1983); *Rakestraw v United Airlines, Inc.*, 765 F. Supp. 474, 493-94 (N.D. Ill. 1991), *aff'd in relevant part and rev'd in part on other grounds*, 981 F.2d 1524 (7th Cir. 1992); *Crusos v. United Transp. Union, Local 1201*, 786 F.2d 970, 973 (9th Cir. 1986), *cert. denied*, 479 U.S. 934 (1986); *Masy v. N.J. Transit Rail, Inc.*, 790 F.2d 322 (3d Cir. 1986); *United Independent Flight Officers, Inc. v. United Air Lines, Inc.,* 572 F. Supp. 1494, 1509 (N.D. Ill. 1983), *aff'd*, 756 F.2d 1274 (7th Cir. 1985); *Hodges v. Atchison, Topeka & Santa Fe Ry. Co.*, 728 F.2d 414 (10th Cir.), *cert. denied*, 469 U.S. 822 (1984); *Steffens v. BRAC*, 797 F.2d 442, 445 (7th Cir. 1986); *Kozra v. IBEW*, 892 F. Supp. 536 (S.D.N.Y. 1995).

## IV.     THE PUBLIC INTEREST WEIGHS IN FAVOR OF GRANTING A STAY.

Public interest, the last factor in the stay analysis, also weighs in favor of granting a stay. The public interest in preventing the subversion of § 1113 and the Railway Labor Act, and preventing the Court from exceeding its jurisdiction, will also be served by a stay. *See also*, *In re Adelphia Communications Corp.*, 361 B.R. at 367 ("there is a significant public interest in vindicating the rights of the minority and preventing the will of the majority to go unchecked by appellate review").

## CONCLUSION

Because (1) the Supplement B Pilots will suffer irreparable injury absent a stay, (2) no other party would suffer any injury if a stay is granted, (3) the Supplement B Pilots have a substantial possibility of success on appeal, and (4) the public interest weighs in favor of granting a stay, the Supplement B Pilots respectfully request that this Court grant their motion for a stay pending appeal of the Court's September 5, 2012 Order, insofar as the order permits American to abrogate the provisions of Supplement B.

Dated:  November 23, 2012

Respectfully submitted,

By:  ***/s/Stanley J. Silverstone***
Stanley J. Silverstone
ssilverstone@ssmplaw.com
SEHAM, SEHAM, MELTZ & PETERSEN LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601
Tel: (914) 997-1346; Fax: (914) 997-7125

*Counsel for Supplement B Pilot Beneficiaries*